**Dennis JUBILEE, Plaintiff,**

v.

**Martin HORN, et al., Defendants.**

**Civil Action No. 96–3818.**

United States District Court,
E.D. Pennsylvania.

April 7, 1997.

Dennis D. Jubilee, Graterford, PA, pro se.

John O.J. Shellenberger, John G. Knorr, III, Office of Attorney General, Philadelphia, PA, for Defendants.

## MEMORANDUM

JOYNER, District Judge.

Plaintiff instituted this 42 U.S.C. § 1983 action alleging that Defendants' parole procedures violated his rights under the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution. On December 10, 1996, we entered an Order dismissing this action in its entirety with prejudice. On December 23, 1996, Plaintiff filed a Motion to Alter or Amend Judgment. This Motion, taken together with the supporting memorandum Plaintiff filed on January 22, 1997, seeks (1) reconsideration of our December 10 Order, (2) leave to amend the Complaint, and (3) the appointment of counsel. We address all three requests today.

## BACKGROUND

Plaintiff, a *pro se* litigant, is a prisoner at the State Correctional Institution at Grater-

ford, Pennsylvania ("SCIG"). Defendants are numerous officials and employees of the Pennsylvania Department of Corrections ("DOC") and Pennsylvania Board of Probation and Parole (the "Board").

Plaintiff alleges the following facts.[1] On November 14, 1994, Plaintiff was returned to SCIG for violating the curfew provisions of his parole. After a hearing, the Board recommitted Plaintiff for twelve months for the violation, setting reparole eligibility for on or after November 14, 1995.[2] On or about October 30, 1995, however, the Board notified Plaintiff that it was suspending the reparoling portion of this directive and was going to review Plaintiff's reparole eligibility status once again. This second reparole review process began in December, 1995 and was not completed until July, 1996 because Defendants intentionally delayed processing paperwork and completing other procedures necessary for reparole consideration. Further, certain unnamed officials deliberately sent false information to the Board so that Plaintiff would be denied parole. According to an exhibit attached to Plaintiff's Amended Complaint, at the conclusion of this second reparole review, the Board set no new reparole eligibility date, ordered Plaintiff to participate in various treatment programs, and set a review date of his reparole status for July, 1997.

Based on these alleged facts, Plaintiff filed the instant Complaint on August 12, 1996 claiming violations of his equal protection and due process rights and charging that the reparole procedures subjected him to double jeopardy and cruel and unusual punishment.[3] On October 9, 1996, Defendants moved to dismiss Plaintiff's Complaint in its entirety. As noted *supra*, we granted this motion on December 10, 1996, dismissing the action with prejudice. We turn now to the three requests before the Court.

## DISCUSSION

### I. Reconsideration of the December 10, 1996 Order

A motion for reconsideration pursuant to Rule 59(e) must rely on one of three major grounds: (1) an intervening change of controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice. *North River Ins., Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir.1995) (citations omitted). The instant motion relies on the third ground. Plaintiff argues that in dismissing the entire action with prejudice we failed to give his complaint the liberal construction that is due *pro se* plaintiffs. Plaintiff moves that we reconsider Defendants' Motion to Dismiss under the proper standard.

A court should dismiss a claim pursuant to Rule 12(b)(6) for failure to state a cause of action only if it appears certain that no relief could be granted under any set of facts which could be proved. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). Granting such a motion determines the merits at an early stage of a plaintiff's case, therefore the court must accept as true all of the allegations in the pleadings and must give the plaintiff the benefit of every favorable inference that may be drawn from those allegations. *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir.1991); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990). Moreover, a *pro se* complaint must be liberally construed and held to a less stringent standard than formal

---

1. The factual allegations contained in Plaintiff's Complaint are somewhat difficult to decipher. Plaintiff's Opposition to Defendants' Motion to Dismiss (Document No. 17) provides supplemental information and clarifies Plaintiff's allegations at certain points. Given Plaintiff's *pro se* status, we include this additional information in our recitation of the factual allegations in this case.

2. In his Complaint, Plaintiff alleges that the recommitment order "specified that [he] will be released on parole on November 14, 1995." (Complaint, ¶ 20.) Attached to Plaintiff's Amend-

ed Complaint (and Defendants' Motion to Dismiss), however, is a copy of the actual recommitment order, which provides clearly for "reparole on or after 11–14–95." Where an exhibit to a pleading contradicts the pleading itself, the exhibit controls. *See In re First Chicago. Corp. Securities Litigation*, 769 F.Supp. 1444, 1450 (N.D.Ill.1991).

3. Plaintiff also brought a RICO claim that we dismissed as frivolous when we granted Plaintiff leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(d).

pleadings. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A *pro se* action "can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* at 106, 97 S.Ct. at 292 (quoting *Haines v. Kerner,* 404 U.S. 519, 521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972)).

■ We refuse to reconsider our dismissal of Plaintiff's double jeopardy and cruel and unusual punishment claims as these claims plainly lack merit.[4] As to the due process and equal protection claims, we grant reconsideration to address a new argument raised by Plaintiff with respect to the former and to re-examine the manner in which we applied the 12(b)(6) standard to the latter.

*A. Due Process*

■ In his Complaint, Plaintiff alleges that Defendants unconstitutionally denied him the opportunity to be released on parole. He claims that he was denied "consideration of parole as is his right" and the "fair application of policies, processes and procedures ... as [they relate] to parole readiness." (Complaint, ¶¶ 28, 35.) He contends further that Defendants' failure to process his paperwork caused him to be "incarcerated well beyond his minimum period of recommitment." (Complaint, ¶ 32.) We agreed with Defendants initially, and we continue to agree now, that these allegations must be construed to assert a liberty interest in parole and, to the extent that they do, this claim must be dismissed with prejudice. As we noted in our December 10 Order, a prisoner has no right to be released before the expiration of a valid sentence arising under either the Constitution itself or Pennsylvania law. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *Commonwealth ex rel. Sparks v. Russell,* 403 Pa. 320, 169 A.2d 884, 885 (1961); *Tubbs v. Pennsylvania Board of Probation and Parole,* 152 Pa.Cmwlth. 627, 620 A.2d 584, 586, *app. denied,* 536 Pa. 635, 637 A.2d 295 (1993); *Reider v. Commonwealth, Pennsylvania Board of Probation and Parole,* 100 Pa.Cmwlth. 333, 514 A.2d 967 (1986) (en banc). Thus, Plaintiff has no liberty interest or entitlement to parole that must be protected with procedural safeguards.

In his Motion to Reconsider, however, Plaintiff maintains that the Complaint must also be construed to allege a violation of Plaintiff's *substantive* due process rights. In essence, Plaintiff now argues that the allegedly arbitrary and capricious denial of parole constitutes a substantive due process violation separate and distinct from any procedural due process claim. Our Court of Appeals does appear to recognize such a cause of action. In *Block v. Potter,* 631 F.2d 233 (3d Cir.1980), the court reasoned that "the touchstone of due process is protection of the individual against arbitrary action of government." *Id.* at 235 (quoting *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974)). Thus,

> [e]ven if a state statute does not give rise to a liberty interest in parole release under *Greenholtz,* once a state institutes a parole system all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible rea-

---

**4.** It is well-settled that jeopardy does not attach at parole hearings. *See Morrissey v. Brewer,* 408 U.S. 471, 478, 92 S.Ct. 2593, 2598–99, 33 L.Ed.2d 484 (1972); *U.S. v. McGowan,* 960 F.2d 716, 718 (8th Cir.1992) ("A decision to delay a defendant's probable release date ... is an administrative decision and not a criminal prosecution."); *Jonas v. Wainwright,* 779 F.2d 1576, 1577 (11th Cir.1986) (the Double Jeopardy Clause does not apply to vacation of a presumptive parole release date).

Further, in order to state a cruel and unusual punishment claim, the deprivation alleged must be, "objectively, 'sufficiently serious'" to result in the denial "of 'the minimal civilized measure of life's necessities.'" *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994) (citations omitted). Taking all of Plaintiff's allegations as true and drawing all reasonable inferences in his favor, Plaintiff alleges only that the parole procedures at issue caused him "severe mental anguish." Such a claim does not, as a matter of law, amount to a claim of denial of the minimal civilized measures of life's necessities. *See generally, Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Knop v. Johnson,* 977 F.2d 996, 1012–13 (6th Cir.1992); *Riley v. Jeffes,* 777 F.2d 143 (3d Cir.1985).

sons. Consequently, in alleging that the [Board of Parole] acted arbitrarily by basing its decision on impermissible grounds, we believe that [the plaintiff] has stated a valid due process claim that this Court must resolve.

*Id.* at 236. The court reaffirmed this holding in *Burkett v. Love,* 89 F.3d 135 (3d Cir.1996), when it explained that even though a Pennsylvania prisoner has no protectable liberty interest in parole, "[a] legislative grant of discretion does not amount to a license for arbitrary behavior." *Id.* at 139 (quoting *Block,* 631 F.2d at 236).

■ Liberally construing the Complaint, we find that Plaintiff alleges that Defendants have intentionally delayed completing the paperwork and other procedures necessary for Plaintiff's parole consideration; deliberately used erroneous and incorrect information in reviewing his parole status; and maliciously used their procedures to prevent him from being considered for parole "in a timely fashion." (Complaint, ¶¶ 29, 30, 32, 33 and 34.) In sum, Plaintiff alleges that Defendants "arbitrarily and capriciously" applied their parole policies and procedures to Plaintiff, thereby "discriminating against [him] for no reason." (Complaint, ¶ 35.) Based on these allegations, we conclude that the Complaint states a valid substantive due process claim under *Block* and *Burkett.* We attribute Plaintiff's failure to raise this argument in response to Defendants' initial Motion to Dismiss to his *pro se* status, and reverse our initial dismissal of Plaintiff's due process claim accordingly.

### B. Equal Protection

This substantive due process theory very closely resembles the requirements of the equal protection clause in the parole context. In *Brandon v. District of Columbia Board of Parole,* 734 F.2d 56, 60 (D.C.Cir.1984), the court explained that "[e]ven in the absence of a fundamental right or a suspect classification, equal protection requires that a classification between similarly situated individuals

bear some rational relationship to a legitimate state purpose." Thus, equal protection requires "that the state act 'sensibly and in good faith'; parole decisions, like all other forms of state action, cannot be based on impermissible purposes." *Id.* (citation omitted); *Hayes v. Muller,* 1996 WL 583180, *9 (E.D.Pa. Oct. 10, 1996) (quoting same). The court in *Brandon* therefore concluded that the plaintiff inmate had stated an equal protection claim by alleging that the defendant had "purposefully singled him out for harsher treatment than that accorded to similarly situated prisoners." *Id.; see also Klein v. Pyle,* 767 F.Supp. 215, 218 (D.Colo.1991) (quoting same).[5]

■ As noted *supra,* the Complaint, construed liberally, alleges that Defendants have intentionally delayed completing the paperwork and other procedures necessary for Plaintiff's parole consideration; deliberately used erroneous and incorrect information in reviewing his parole status; and maliciously used classification and staffing procedures to prevent him from being considered for parole "in a timely fashion." (Complaint, ¶¶ 29, 30, 32, 33 and 34.) Plaintiff does not claim specifically that other similarly situated prisoners received more efficient or expeditious resolution of their reparole review. *See Hayes,* 1996 WL 583180 at *9. He does allege, however, that he "has not been afforded the process ... that is available to inmates with like status" and that he "has been discriminated against for no reason." (Complaint, ¶¶ 28, 35.) Upon reconsideration, we conclude that these allegations of disparate treatment with an element of intentional or purposeful discrimination are sufficient to state an equal protection claim. *Brandon,* 823 F.2d at 651.

### II. Leave to Amend the Complaint

■ As noted *supra,* Plaintiff filed an Amended Complaint with the instant motion. Defendants argue that seeking to amend a complaint that has already been dismissed

---

5. In a subsequent opinion, the D.C. Circuit affirmed the entry of summary judgment for the defendant because the plaintiff had failed to "establish that he was treated differently than other prisoners in his circumstances with regard to the

[defendant's] failure to afford meaningful reparole consideration because of its delay in obtaining a forensic psychiatric evaluation." *Brandon v. District of Columbia Bd. of Parole,* 823 F.2d 644, 650 (D.C.Cir.1987).

with prejudice is untimely, thus the amended pleading must be dismissed as well. A complaint that has been dismissed with prejudice may be amended, however, with leave of the court. *See Averbach v. Rival Manufacturing Company*, 1986 WL 3111, * 3 (E.D.Pa. Mar. 12, 1986). Further, upon reconsideration, we have ruled that Plaintiff's substantive due process and equal protection claims should not be dismissed pursuant to Rule 12(b)(6). We therefore treat Plaintiff's filing of the amended complaint as a motion to amend.

 Under Federal Rule of Civil Procedure 15(a), leave to file an amended pleading shall be "freely given when justice so requires." Fed.R.Civ.P. 15(a). A district court may deny leave to amend only where there has been undue delay, bad faith or dilatory motive on the part of the movant, where the amendment would prejudice the non-movant, or where the amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Here, Defendants have not claimed undue prejudice, delay or bad faith, thus the only grounds for denying leave to amend would be futility of amendment. In this Circuit, an amendment is considered futile "if the amended complaint cannot withstand a motion to dismiss." *Jablonski v. Pan American World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir.1988); *Wolfson v. Lewis*, 168 F.R.D. 530, 534 (E.D.Pa.1996). We therefore examine the three new claims in the Amended Complaint under the standards applicable to *pro se* pleadings as described above.[6]

## A. Res Judicata

Plaintiff's res judicata claim concerns the preclusive effect of the Board's initial recommitment order on the subsequent reparole review proceedings.[7] Specifically, Plaintiff alleges that the Board was precluded from reviewing his reparole eligibility status after

having already reached a "final adjudication on [the] merits" regarding this matter. Defendants argue that res judicata has no application to this case because parole review proceedings do not produce final judgments of legal causes of action.

 Under Pennsylvania law, the doctrine of res judicata is defined as follows:

the doctrine of res judicata generally applies when the cause of action in one proceeding is identical with that involved in a prior judgment. The doctrine dictates that a final judgment on the merits is conclusive of the rights of the parties and constitutes a bar to subsequent action involving that same claim, demand or cause of action.

*Cromartie v. Pennsylvania Bd. of Probation and Parole*, 680 A.2d 1191, 1196 (Pa.Cmwlth. 1996) (citations omitted). The doctrine has been held applicable to parole proceedings. *See Knox v. Pennsylvania Bd. of Probation and Parole*, 138 Pa.Cmwlth. 344, 588 A.2d 79 (1991). *Knox* involved the parole revocation proceedings of a parolee convicted of retail theft by a district magistrate. The parole agent charged Knox with violating his parole based on this conviction, but because the district magistrate was not a court of record, the Board's hearing examiner denied recommitment. *Id.* 588 A.2d at 81. The agent then recharged Knox with technical parole violations for the same conduct and, after a second hearing, Knox was recommitted. *Id.* Reasoning that res judicata applies to administrative agency determinations, the court held that the doctrine barred Knox's recommitment after the second hearing. *Id.* at 81–82. Res judicata "prevented the Board from recommitting Knox on the technical parole violations in a second Board hearing when those charges could have been brought in the first adjudication, because the cause of action in the adjudications was identical." *Cromartie*, 680 A.2d at 1196 (citing *Knox*, 588 A.2d at 82).

---

6. The Amended Complaint includes six counts: equal protection, res judicata, ex post facto, wrongful retaliation, due process and cruel and unusual punishment. We deny leave to amend as to the equal protection and due process claims because we have concluded that these claims, as pleaded in the original Complaint, were legally sufficient. Leave is denied with prejudice as to

Plaintiff's cruel and unusual punishment claim because the claim is meritless.

7. The Amended Complaint includes a collateral estoppel claim as well, but Plaintiff concedes that this doctrine has no application to parole hearings in his subsequent memorandum. We therefore do not consider this claim.

■ Plaintiff does not allege that he was wrongly recommitted for violating the terms of his parole in the first place. Nor does he allege that Defendants rescinded the initial recommitment order based on charges of wrongdoing that should have been resolved at the first recommitment hearing. Rather, Plaintiff claims that, having determined that he was eligible for reparole on or after November 15, 1995, Defendants were barred from rescinding this eligibility date, revisiting his status, and determining a new reparole eligibility status based at least in part on information that was available at the first hearing. This, without more, is insufficient to state a claim. We find no legal basis for the contention that the Board's discretionary decision based on an undisputed factual record is a "final adjudication on the merits" of a legal cause of action which may not then be subsequently modified. Indeed, such an argument is fundamentally inconsistent with the Board's broad discretion under 61 Pa. Con.Stat.Ann. § 331.21. *See also Tubbs,* 620 A.2d at 586 (Pa.Cmwlth.1993) ("The decision of whether to 'set back' a prisoner's reparole date is an exercise of the Board's discretion not to release a prisoner on parole."). We therefore deny leave to amend this claim, but do so without prejudice, should Plaintiff be able to allege facts that bring his case within the ambit of *Knox.*

### B. The Ex Post Facto Clause

Plaintiff alleges that the Board violated the Ex Post Facto Clause by rescinding his parole eligibility status determined under the "old criteria" and reviewing him as "a violent criminal under newly established parole eligibility criteria." (Amended Complaint, ¶¶ 2, 29.) Defendant argues this *ex post facto* claim must fail given the absence of any change in Pennsylvania law relating to parole.

■ The Ex Post Facto Clause prohibits states from passing "any ... ex post facto law." U.S. Const. Art. I, Sec. 10, Cl. 1. It is well-settled that a law "which ... makes more burdensome the punishment for a crime, after its commission, ... is prohibited as *ex post facto.*" *Dobbert v. Florida,* 432 U.S. 282, 292, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977) (quoting *Beazell v. Ohio,* 269 U.S. 167, 169–70, 46 S.Ct. 68, 68, 70 L.Ed. 216 (1925)). As a threshold matter, however, it must be a *law* that makes the punishment more burdensome for ex post facto purposes. Our Court of Appeals has instructed that "laws" in this context include not just statutes but also some "validly promulgated [administrative] regulations" as well. *United States ex rel. Forman v. McCall,* 709 F.2d 852, 859 (3d Cir.1983). The court then explained in *McCall* that whether the parole guidelines of the United States Parole Commission constituted "laws" depended on whether they were "applied without sufficient flexibility." *Id.* at 862.[8] Subsequently, the court held that said guidelines were not laws based on evidence that the "average annual percentage of within-guideline decisions was 75.4%." *United States ex rel. Forman v. McCall,* 776 F.2d 1156, 1163 (3d Cir.1985).

■ The instant case concerns not the U.S. Parole Commission, of course, but the Pennsylvania Board of Probation and Parole. Here, Plaintiff alleges that his rights under the Ex Post Facto Clause were violated by the application of "newly established parole eligibility *criteria.*" Plaintiff does not specify whether by "criteria," he refers to a new statute or regulation, or simply "internal policy changes," as Defendants suggest. Moreover, it appears that the Board adheres to no formal guidelines in making its parole and reparole determinations. Rather, the Board has complete discretion "to release on parole any convict ... except convicts condemned to death or serving life imprisonment, whenever in its opinion the best interests of the convict justify or require his being paroled and it does not appear that the interests of the Commonwealth will be injured thereby." 61 Pa.Con.Stat.Ann. § 331.21. We therefore find Plaintiff's allegation of "newly established parole criteria" insufficient to state a claim under the Ex Post Facto Clause. We again deny leave to amend without prejudice, however, to allow Plaintiff to replead a

---

**8.** The court noted subsequently that every other circuit that addressed this issue rejected this position. *U.S.A. ex rel. Forman v. McCall,* 776 F.2d 1156, 1159 & n. 3 (3d Cir.1985) (citing cases).

change in law, should such change become known to him.

## C. Wrongful Retaliation

Plaintiff claims that Defendants retaliated against him for exercising his constitutional rights in challenging the parole process. Defendants argue that Plaintiff has failed to allege the necessary elements of a § 1983 wrongful retaliation claim.

 Our Court of Appeals recently stated that "[c]ase law has . . . established that a state may not bar parole in retaliation for a prisoner's exercise of his constitutional rights." *Burkett,* 89 F.3d at 140 (citing cases).[9] No Third Circuit precedent explicitly defines the elements of a § 1983 retaliation claim in the parole context. Generally, however, a party claiming unconstitutional retaliation must allege that the constitutionally protected conduct was a substantial or motivating factor influencing the alleged retaliation and said retaliation would not have occurred but for the protected conduct. *Mt. Healthy City School Dist. Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *cf. Blizzard v. Hastings,* 886 F.Supp. 405, 409 (D.Del. 1995) ("in order to prevail on a claim of retaliation, a prisoner must demonstrate by a preponderance of the evidence that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals") (adopting *Barnett v. Centoni,* 31 F.3d 813, 815–16 (9th Cir.1994) (per curiam)).

 We agree with Defendants and find Plaintiff's allegations woefully inadequate, even considering his *pro se* status. Liberally construing the phrase "constitutional rights," we infer that Plaintiff is referring to his rights of free speech and access to the courts. As Defendants rightly note, however, Plaintiff makes no allegations concerning if and what they knew about his parole process challenges, when they knew it, or how it affected any decisions they made. In short, Plaintiff alleges no facts that support his bare assertion that Defendants wrongfully retaliated against him for exercising his con-

stitutional rights. Leave to amend is denied without prejudice accordingly. *See Adams v. Rice,* 40 F.3d 72, 74 (4th Cir.1994).

## III. Appointment of Counsel

At paragraph 3 of his original Motion to Alter or Amend Judgment (Document No. 21), Plaintiff states that he "does not the [sic] funds for materials, attorney fees and other items to adequately present his claim, and wishes for the appointment of counsel." This plea appears to be a Motion for the Appointment of Counsel pursuant to 28 U.S.C. § 1915(d). The request for counsel was not mentioned even once, however, in the six page, single-spaced memorandum (Document No. 23) that Plaintiff submitted subsequently in support of the instant motion. This leaves us with some doubt as to whether Plaintiff does in fact desire the appointment of counsel. Such a request pursuant to § 1915(d) is not a matter to be taken lightly, given "the limited supply of competent lawyers who are willing to undertake such representation without compensation." *See Tabron v. Grace,* 6 F.3d 147, 157 (3d Cir.1993). It can also be a difficult legal question, requiring a balancing of several factors. *Id.* at 155–58. We are unwilling to undertake this analysis and, potentially, to appoint counsel in the absence of a clear indication that Plaintiff does in fact desire such a result. We therefore deny the request without prejudice and grant Plaintiff leave to file the appropriate motion should he desire.

## CONCLUSION

For the foregoing reasons, we grant in part Plaintiff's motion to reconsider our December 10 Order dismissing the instant action with prejudice. Upon reconsideration, we find that Plaintiff's due process and equal protection claims should not be dismissed pursuant to Rule 12(b)(6). In addition, we deny without prejudice Plaintiff's motions for leave to amend and for the appointment of counsel. An appropriate Order follows.

## ORDER

AND NOW, this 7th day of April, 1997, upon consideration of Plaintiff's Motion to

---

**9.** We assume based on this language that the court would also recognize § 1983 claim based on the indefinite suspension of a reparole eligibility date in response to a prisoner's exercise of constitutional rights.

Alter or Amend Judgment (Document Nos. 19 and 23), and Defendants' response thereto (Document No. 22), it is hereby ORDERED in accordance with the attached Memorandum that the Motion is GRANTED in PART and DENIED in PART as follows:

(1) the Order dated December 10, 1996 granting Defendants' Motion to Dismiss in its entirety is VACATED;

(2) Defendants' Motion to Dismiss (Document No. 11) is DENIED as to the substantive due process and equal protection claims alleged in Count I and Defendants shall file an Answer to these claims within twenty (20) days of the date of entry of this Order;

(3) Defendants' Motion to Dismiss is GRANTED as to Counts II and IV and Counts II and IV are DISMISSED with prejudice;

(4) Leave to file an Amended Complaint is DENIED without prejudice; and

(5) Plaintiff's request for the appointment of counsel pursuant to 28 U.S.C. § 1915(d) is DENIED without prejudice.